IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN ANTHONY KIDWELL III,            *

Plaintiff,                           *

v.                                   *            Civil Action No. ELH-23-1750

OFC. THOMAS A. LEE, *et al.*,        *

Defendants.                          *
                                    ***

## MEMORANDUM OPINION

The self-represented plaintiff, John Anthony Kidwell III, was a pretrial detainee at the Cecil County Detention Center ("CCDC").[1]  He filed suit under 42 U.S.C. § 1983 against CCDC and several Corrections Officers:  DFC Thomas Lee; CPL Richard Clayton; Sgt. Tyler Fox; Lt. Darryl "Osbourn"; DFC Jacob Platt; CPL "Ceasar" Salcedo; and CPL Miguel Reyes.  Kidwell alleges, *inter alia*, that the officers used excessive force against him on May 26, 2021.  ECF 1.  He seeks compensatory and punitive damages.  *Id.* at 4.

Kidwell was directed to supplement the Complaint.  ECF 4.  He filed an Amended Complaint (ECF 5) and later a Second Amended Complaint.  ECF 6.[2]  In ECF 6, Kidwell added several new defendants:  Lt. William Jolly; Cpl. Ezekiel Shell; lst Sgt. Michael Rea; and Ofc. "Leu Becker".[3]

---

[1]  Plaintiff is currently incarcerated at the North Branch Correctional Institution in Cumberland, Maryland.  ECF 23-1 at 2.

[2]  Plaintiff filed two documents labeled "Amended Complaint," which were docketed as an Amended Complaint and a Second Amended Complaint.  ECF 5, ECF 6.  The amended complaints shall be construed as supplements to the Complaint.  Nevertheless, for clarity, they shall be referenced as the Amended Complaint (ECF 5) and the Second Amended Complaint (ECF 6).  Defendants were served with all three pleadings and responded.  ECF  23; ECF 23-1.

[3]  The Clerk will be directed to amend the docket to reflect the correct spelling of the name of defendants Darryl Osborne and Caleb Leubecker.  As to defendant Salcedo, the Clerk will be

Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 23. The motion is supported by a memorandum of law (ECF 23-1) (collectively, the "Motion") and several exhibits. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Kidwell was informed of his right to respond and that the failure to file a response in opposition to the Motion could result in dismissal of his suit. ECF 24. Kidwell has not responded.

Upon review of the submissions, the Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I.    Factual Background

A. Kidwell's Allegations

ECF 6 contains two counts. Count 1 is titled "42 U.S.C.§ 1983: Eighth and Fourteenth Amendment, conditions of confinement and excessive use of force." *Id.* at 7. Count 2 is titled "42 U.S.C. § 1983: First Amendment, Freedom of Speech." *Id.*

In plaintiff's verified Second Amended Complaint (ECF 6), he asserts that he is "a member of the Lesbian, Gay, Bisexual, Transgender, Queer (LGBTQ) Community." *Id.* at 2. Kidwell alleges that on May 26, 2021, he was in the segregation unit at CCDC. *Id.* at 2. Officer Lee called maintenance to fix the toilet in Kidwell's cell and said "cuff up faggot," so that Kidwell could be removed from the cell in order to fix the toilet. *Id*. at 3. Kidwell then engaged in a verbal dispute with Officer Lee regarding whether he was to receive recreation, and Kidwell told Lee that he would be the first officer to be stabbed at CCDC. *Id*. Lee placed Kidwell back in his cell and contacted Officer Michael Rea to determine whether Kidwell was entitled to recreation, given that

---

directed to correct the spelling of the defendant's first name, from Ceasar to Cesar. Further, the Clerk will be directed to terminate defendant Miguel Rehyes, who appears to be the same person as Miguel Reyes.

he flooded his toilet the day before. *Id*. at 4. Officers Lee and Salcedo returned to Kidwell's cell to ask whether he wanted recreation or a shower. *Id*. Kidwell stated that he wanted a shower, after which Lee opened the cell door without cuffing Kidwell. *Id*. Kidwell then showed Lee a "sharpened screw that he had removed from his waistband" and stated that "had Plaintiff wanted to, he could have stabbed him for his harassment, homophobic slurs, and disrespect of Plaintiff's children." *Id*. Lee asked Kidwell if he was going to stab him, and Kidwell said no. *Id*. Kidwell "did not make any aggressive moves." *Id*.

Plaintiff alleges that Officer Lee "assaulted Plaintiff with multiple closed fist blows to the face and head at which time the Plaintiff threw the screw away from him and began to yell, I am not resisting." *Id*. at 4. Plaintiff claims: "Lee continued to punch the Plaintiff and threw him to the ground." *Id*. Officer Salcedo cuffed Kidwell, while Officer Lee continued to beat him and yells slurs at him. *Id*. Additional officers responded, including defendants Jolly, Shell, Reyes, Rea, Platt, and Fox, and other unknown officers, who sprayed Kidwell in the face with mace and tazed him multiple times, all while calling him homophobic slurs. *Id*. at 5. According to the original Complaint, defendants Clayton and Osborne were also in the group of responding officers who assaulted Kidwell, and the assault included additional punches while plaintiff was handcuffed and on the ground. ECF 1 at 3.

Kidwell was taken to medical to be assessed by a nurse, during which time defendants continued to verbally harass him. ECF 6 at 5. After seeing the nurse, officers returned plaintiff to the central booking area and the strip search room, where they removed his handcuffs. *Id*. Plaintiff alleges that Cpl. Ezekiel punched him six times in the mouth. *Id*. And, he asserts that Officers Platt, Reyes, Becker, and Fox assaulted Kidwell again, placed him in a restraint chair, and, using additional homophobic slurs, told him that Caroll County would be coming to get him. *Id*.

According to plaintiff, while he was awaiting transfer to Carroll County, he was assessed by a nurse who took pictures of his injuries. *Id*. at 6. Kidwell repeatedly asked officers for a grievance form in order to file a complaint, but the request was denied. *Id*.

Upon plaintiff's arrival at Carroll County Detention Center later the same day, Kidwell received additional medical attention, including x-rays. ECF 6 at 6. Photos were taken of plaintiff's injuries, which included black eyes that were swollen shut, cuts on his forehead, a split bottom lip, and bruising. *Id*.

B. Defendants' Response

Defendants recount that on May 25, 2021, plaintiff purposely clogged his toilet and flooded his cell. ECF 23-1 at 3. Then, on May 26, 2021, Kidwell requested recreation and a shower. *Id*. at 2. Officer Lee sought to confirm with his supervisor that Kidwell was allowed recreation and a shower. *Id*.

After Officer Lee obtained approval, he asked Kidwell to exit his cell. *Id*. at 3. When the door opened, Kidwell "pulled a long piece of metal from his waistband and threatened Officer Lee." *Id*. (citations omitted). Officer Lee, "fearing for his life, immediately struck Kidwell in the face with a closed fist and attempted to secure him, while ordering him to drop the weapon." *Id*. (citation omitted). Kidwell refused to drop the weapon or put his hands behind his back. *Id*. (citation omitted). Because Officer Lee could not secure Kidwell "he unholstered his taser and applied a five-second stun drive." *Id*. (citation omitted). Several officers arrived to help restrain Kidwell. *Id*.

Officer Salcedo entered the cell and "grabbed" Kidwell's legs "in an attempt to help control him." *Id*. (citation omitted). Officer Osborne arrived "as Kidwell was still struggling to escape the Officers' grasp and refusing to allow himself to be handcuffed." *Id*. (citation omitted). Officer

Osborne heard other officers yelling "'Shank, he's got a shank, so he dispersed a one-second blast of pepper spray in an attempt to subdue Kidwell." *Id.* (citation omitted). Because "Kidwell still refused to submit, drop his weapon, and allow the officers to place him in handcuffs," Officer Osborne "applied two strikes to Kidwell's torso with his fist and two with his knee. *Id.* (citation omitted). Only then did Kidwell drop his weapon and allow the Officers to handcuff him." *Id.* (citation omitted).

Kidwell was taken to the medical unit for evaluation. *Id.* (citation omitted). He was subsequently taken to the booking unit. *Id.* (citation omitted). Kidwell's cell was searched and the shank was recovered. *Id.* at 4 (citation omitted). According to defendants, Officer Jolly was not involved in the incident. *Id.* at 4 (citation omitted).

On March 7, 2022, plaintiff plead guilty in the Circuit Court for Cecil County to first degree assault of Officer Lee. ECF 23-14. He was sentenced to ten years of imprisonment. ECF 23-1 at 4.

Defendants urge dismissal of the Complaint, alleging: 1) Kidwell failed to exhaust his administrative remedies; 2) Kidwell's claim of excessive force is barred pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), because his conviction for assaulting defendant Lee has not been reversed; 3) officers did not use excessive force; they used only such force as was necessary to disarm and restrain Kidwell; 4) officers did not prevent Kidwell from filing a grievance; and 5) defendants are entitled to qualified immunity.[4]

---

[4] Defendants also argue that plaintiff has not stated a claim for excessive force or unconstitutional prison conditions under the 8th Amendment or an access to courts claim related to his alleged requests to file grievances. ECF 23-1 at 10, 11. However, the Court does not construe the Complaint, which describes the conditions of Kidwell's cell as the context for the dispute that occurred with defendant Lee, as making a claim for unconstitutional conditions of confinement. Similarly, Kidwell's allegation that he repeatedly requested a grievance form appears to be contextual rather than an access to courts claim. Finally, the court construes

In support of their Motion, defendants submitted the affidavits of defendants Thomas Lee (ECF 23-3); Cesar Salcedo (ECF 23-4); Ezekiel Shell (ECF 23-5); Jacob Platt (ECF 23-6); Darryl Osborne (ECF 23-7); Miguel Reyes (ECF 23-8); Richard Clayton (ECF 23-9); Tyler Fox (ECF 23-10); Caleb Leubecker (ECF 23-11); Michael Rea (ECF 23-12); and William Jolly (ECF 23-13).  Additionally, defendants submitted a copy of the State case information sheet pertaining to Kidwell's assault of Lee (ECF 23-14), CCDC's Inmate Manual (ECF 23-15), and the Affidavit of Matthew Carr, Warden of CCDC (ECF 23-16).

## II.    Standard of Review

### A.

As a self-represented litigant, Kidwell's submissions are liberally construed.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (recognizing the "leniency" in treatment of pro se submissions, "necessarily requiring . . . thoughtful consideration [by the court] of all factual allegations, and  not just expressly pled claims"); *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020) (stating that the court construes pro se pleadings "'liberally and interpret[s] them to raise the strongest arguments that they suggest.'") (some internal quotation marks omitted; citation omitted); *Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).  But, the court must also

---

Kidwell's excessive force claim as an alleged violation of the 14th Amendment, rather than the 8th Amendment, because Kidwell was a pretrial detainee at the time of the incident.

abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)), *cert. denied*, 541 U.S. 1042 (2004).

**B.**

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Seabrook v. Driscoll*, ___ F.4th ___, 2025 WL 2202135, at *2 (4th Cir. Aug. 4. 2025); *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025); *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021); *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317–18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Instead, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Hebb v. City of Asheville, N. Carolina*, ___ F.4th ___, 2025 WL 2055074, at *4 (4th Cir. July 23, 2025); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts."  *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010).  Nor does the court accept "'legal conclusions couched as facts . . . .'"  *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citation omitted).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).  But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion.  *Morrow v.*

*Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022); *see Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021).

Ordinarily, when ruling on a Rule 12(b)(6) motion, courts do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.' " *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys.*, LLC, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*' " *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250); *see L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits"); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon*

10

*Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). In contrast, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied sub nom.*, *City of Greensboro v. BNT Ad Agency, LLC*, 583 U.S. 1044 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012).

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also Brentzel v. Fairfax Transfer and Storage, Inc.,* 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021) (per curiam); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "As examples, 'courts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous

magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute.'" *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611 n.4 (quoting *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, JFM-10-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010)).

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may only take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Parikh v. Frosh*, PX-22-110, 2023 WL 131043, at *5 (D. Md. Jan. 9, 2023), *aff'd in part, rev'd in part on other grounds*, *Parikh v. Brown*, 2024 WL 2764720 (4th Cir. May 30, 2024) (per curiam); *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 246 n.2 (D. Md. 2013); *cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (concluding that a district court may "properly take judicial notice of its own records").

## C.

Under Rule 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *see also Cybernet, LLC v. David*,

954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). "Applying that standard, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Aleman v. City of Charlotte*, 80 F.4th 264, 283–84 (4th Cir. 2023); *see Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Dewberry Eng'rs Inc. v. Dewberry Grp., Inc.*, 77 F.4th 265, 277 (4th Cir. 2023); *Knibbs v. Momphard*, 30 F.4th 200, 206 (4th Cir. 2022); *Walker v. Donahoe*, 3 F.4th 676, 682 (4th Cir. 2021); *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019);   *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017).  The nonmoving party may avoid summary judgment by demonstrating that there is a genuine dispute of material fact that precludes the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

Pursuant to Fed. R. Civ. P. 56(c)(1), where the moving party bears the burden of proof on the issue at trial, he or she must support the factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ."  But, where the nonmovant bears the burden of proof at trial, the moving party may show that it is entitled to summary judgment by citing to evidence in the record, or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex Corp.*, 477 U.S. at 322–24. The nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 252; *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017). "Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment." *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) (citations omitted). In short, "[u]nsupported speculation is not sufficient to

defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also Reddy v. Buttar*, 38 F.4th 393, 403–04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Therefore, in considering a summary judgment motion, the court may not weigh the evidence or make credibility determinations. *Brown v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Knibbs*, 30 F.4th at 207, 213; *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cnty.*, 893 F.3d 213, 218–19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). In the face of conflicting evidence, such as competing affidavits, a court must deny summary judgment, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

"[S]elf-serving affidavits offered by the non-movant can sometimes defeat summary judgment." *Pfaller v. Amonette*, 55 F.4th 436, 450 (4th Cir. 2022); *see Harrell v. DeLuca*, 97 F.4th 180, 187 (4th Cir. March 27, 2024) (recognizing that the self-serving declarations of nonmovants "can defeat summary judgment"); *Mann v. Failey*, 578 F. App'x 267, 273 n.2 (4th Cir. 2014) (per curiam) (unpublished but orally argued) ("[T]he record could defeat summary judgment even if the evidence consisted exclusively of so-called 'self-serving' declarations from [the nonmovant] himself."); *see also* Fed. R. Civ. P. 56(c)(1)(A), (4). In contrast, self-serving statements made by

the movant are not sufficient. *Pfaller*, 55 F.4th at 450 ("[H]ere it is the *movant . . . who* offers his own statements as the key evidence in support of summary judgment. That is insufficient.") (emphasis in original); *Knibbs*, 30 F.4th at 222 (stating that "the dissent, like the district court, contravenes Rule 56 by accepting [the movant's] self-serving statements and reading the evidence in the light most favorable to *him*.") (emphasis in original).

"Courts in the Fourth Circuit may not consider inadmissible evidence on a motion for summary judgment." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 704 (4th Cir. 2023) (citing *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991)). Therefore, to the extent that evidence amounts to inadmissible hearsay, it "cannot create a factual dispute" for purposes of summary judgment. *Stanton v. Elliott*, 25 F.4th 227, 237 n.7 (4th Cir. 2022) (citing *Md. Highways Contractors Ass'n*, 933 F.3d at 1251); *see also Graves v. Lioi*, 930 F.3d 307, 326 n.15 (4th Cir. 2019) (observing that "hearsay, like other evidence inadmissible at trial, is ordinarily an inadequate basis for summary judgment") (citation and internal quotation marks omitted).

## D.

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. *See* ECF 23. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters

16

outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 222 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin,* 149 F.3d at 261.

Defendants submitted declarations and documents which are not intrinsic to Kidwell's Complaint and are provided to support defendants' position that they did not use excessive force against Kidwell, prevent him from filing a grievance, and that he did not file any grievance

17

regarding the incident.  Therefore, the documents may only be considered in the context of a motion for summary judgment.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Shaw*, 59 F.4th at 128; *Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  *See Shaw* 59 F.4th at 128; *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021); *Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).  "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 F. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. Of Trs., Craven Cmty. Coll*.,

55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit acts at their peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Kidwell has not filed an affidavit pursuant to Rule 56(d) or otherwise requested discovery. Additionally, he was advised of his right to respond to defendants' Motion and did not do so. ECF 24. With the exception of CCDC, I shall construe the Motion as one for summary judgment. This will facilitate resolution of the case.

### III.    Discussion

In their Motion, defendants contend, in part, that: 1) Kidwell failed to exhaust his administrative remedies; 2) Kidwell's excessive force claim is barred pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), because his conviction for assaulting defendant Lee has not been reversed; 3) the correctional officers did not use excessive force because they used only such force as was necessary to disarm and restrain Kidwell; and 5) defendants are entitled to qualified immunity.[5]

A.    Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015). However, § 1983 "'is not itself a source of substantive

---

[5] As explained above, the court does not construe Kidwell's Complaint to include access to courts or conditions claims. Therefore, defendants' arguments related to those claims will not be addressed. Additionally, defendant CCDC correctly argues that it is not a "person" subject to suit under § 1983. ECF 23-1 at 8. Accordingly, CCDC's Motion, construed as a motion to dismiss, will be granted.

rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). "The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245.

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips*, 572 F.3d at 180 (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)); *see also Davison*, 912 F.3d at 679. A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326, (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") .

The doctrine of respondeat superior liability does not apply in § 1983 cases. *Iqbal*, 556

21

U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Section 1983 requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Indeed, "'[i]n a § 1983 suit . . . each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'" *Younger v. Crowder*, 79 F.4th 373, 381 n.12 (4th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 677) (alteration in *Younger*). If a plaintiff has not alleged any personal connection between a defendant and a denial of constitutional rights, the claim against that defendant must fail. *Vinnedge*, 550 F.2d at 928; *see also Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (same); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (same).

But, as the Fourth Circuit articulated in *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013), a supervisor may be held liable "for the failings of a subordinate under certain narrow circumstances." Pursuant to § 1983, liability for supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)); *see Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020); *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014). This requires a plaintiff to allege, *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994):

(1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

To qualify as "pervasive," the challenged conduct must be "widespread, or at least . . . used on several different occasions." *Shaw*, 13 F.3d at 799.  Therefore, it is insufficient to point "to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence . . . nor can he reasonably be expected to guard against the deliberate [unlawful] acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* (quoting *Slakan*, 737 F.2d at 373) (alteration inserted). But, a supervisor's "continued inaction in the face of documented widespread abuses . . . provides an independent basis" for § 1983 liability against that official for his deliberate indifference or acquiescence to "the constitutionally offensive conduct of his subordinates." *Slakan*, 737 F.2d at 373; *see Shaw*, 13 F.3d at 799.

B.    Exhaustion of Remedies

Defendants raise the affirmative defense that Kidwell has failed to exhaust his administrative remedies.  ECF 23-1 at 6.  If Kidwell's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.

The PLRA provides, in pertinent part, 42 U.S.C. § 1997e(a):

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

23

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence and provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted.  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (citations omitted).  A claim that has not been exhausted may not be considered by this court.  *See Jones v. Bock*, 549 U.S. 199, 220 (2007).  In other words, exhaustion is mandatory.  *Ross v. Blake*, 578 U.S. 632, 638-39 (2016).  Therefore, a court ordinarily may not excuse a failure to exhaust.  *Id.* at 339 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion") (alterations in *Ross*)).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Gowen v. Winfield*, 130 F.4th 162, 176 (4th Cir. 2025); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes.  These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies).  It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits.  *Chase*, 286 F. Supp. at 530; *see Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (stating that prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory.").  Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88,

93. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, however, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In *Ross*, 578 U.S. at 635, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 638. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 642. And, as stated, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore,* 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 578 U.S. at

26

643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644; *see also Gowen*, 130 F.4th at 176.

Kidwell alleges that he repeatedly asked correctional staff for a grievance form but his request was denied. ECF 6 at 6. He does not identify the person he asked. Defendants Shell, Platt, Clayton, and Leubecker, who were present when Kidwell was in the booking area, all declare that they did not hear Kidwell ask to file a grievance at any time. ECF 23-5 at 2; ECF 23-6 at 2; ECF 23-9 at 3; ECF 23-10 at 3; ECF 23-11 at 2. However, this is a factual dispute that is not appropriate for resolution at this stage. Moreover, it is apparent that CCDC's remedies were unavailable to Kidwell, because he alleges that he was transferred from CCDC to a facility in Carroll County within hours of the incident at issue. ECF 6 at 6. Defendants say nothing to refute that allegation.

Assuming Kidwell did leave CCDC the same day as the incident, it would have been impossible for him to proceed with the grievance process outlined in the CCDC Inmate Handbook (ECF 23-15), as he was no longer at that facility. As such, Kidwell had no administrative remedies available to him upon leaving CCDC within hours of the incident, and the Complaint cannot be dismissed on that basis.

C.    *Heck v. Humphrey*

Defendants next argue that, pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), Kidwell is barred from filing a § 1983 suit for money damages for defendants' actions in this incident, because he pleaded guilty to first degree assault of Officer Lee.  ECF 23-1 at 2, 8. Defendants argue that Kidwell's contention that he did not threaten Officer Lee with a shank is belied by his guilty plea and therefore Kidwell cannot collect money damages related to this incident, because any finding of unlawful actions by the Officer would render the assault conviction invalid.  *Id.*

Under *Heck*, a State prisoner seeking § 1983 damages in connection with a conviction must prove his conviction or sentence has been invalidated.  *Burrell v. Shirley*, 142 F.4th 239, 248 (4th Cir. 2025).  But, defendants' application of *Heck* in this situation is misplaced; their argument that a finding of excessive force would contradict the finding that Kidwell committed first degree assault is unavailing.  Kidwell's assault on Officer Lee, and the allegation of excessive force by the officers, are mutually exclusive.  Each allegation can be true without disproving the other. *Heck* does not apply to these facts, and defendants' Motion cannot be granted on the basis of *Heck*.

D.    Excessive Force

Defendants contend that summary judgment should be granted in their favor because they did not use excessive force against Kidwell.  ECF 23-1 at 8-10.[6]  Rather, they claim that they "only used the force necessary to disarm and restrain him."  *Id.* at 9.  Each defendant has submitted an affidavit in support of the Motion.  However, they include very few details about the incident and,

---

[6] Defendants also argue that Kidwell has not stated an excessive force claim under the 8th Amendment, because he was a pretrial detainee at the time of the incident.  ECF 23-1 at 10. Kidwell's claims are liberally construed as being brought pursuant to the Fourteenth Amendment due to his status as a pretrial detainee.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

in many instances, fail to respond directly to Kidwell's allegations.  *See*, *e.g.*, ECF 23-3 (Lee); ECF 23-4 (Salcedo); ECF 23-5 (Shell); ECF 23-6 (Platt); ECF 23-7 (Osborne); ECF 23-8 (Reyes); ECF 23-9 (Clayton); ECF 23-10 (Fox); ECF 23-11 (Leubecker); ECF 23-12 (Rea); ECF 23-13 (Jolly).

"Pretrial detainees have a well-settled constitutional right under the Fourteenth Amendment to be 'free from punishment.'"  *Gowen*, 130 F.4th at 174-75 (quoting *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). For a pretrial detainee asserting use of excess force, "the proper standard comes from the Fourteenth Amendment."  *Simmons v. Whitaker*, 106 F.4th 379, 387 (4th Cir. 2024).

A claim of excessive force by a pretrial detainee must show that "the force purposely or knowingly used against him was objectively unreasonable."  *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).  The Supreme Court has provided a non-exhaustive list of factors courts must use to determine objective reasonableness, *id.* at 397:

> [1] [T]he relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

So, to prevail, Kidwell must show that "the use of force is deliberate – *i.e.*, purposeful or knowing."  *Kingsley*, 576 U.S. at 396.  But, Kidwell need not detail his alleged assailant's subjective state of mind.  Rather, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id.* at 396-97; *see also Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016). Objective reasonableness "turns on the 'facts and circumstances of each particular case.'"  *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The court must "make this determination from the perspective of a

reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Id.* at 397.

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). The court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

The absence of significant injury alone is not dispositive of a claim of excessive force, however. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation. But, liability is not avoided merely because the prisoner had "the good fortune to escape" serious harm. *Id*. at 38.

### a.    Thomas Lee

Kidwell contends that he did not make any aggressive moves toward Officer Lee and that he stated that he was not going to stab him. But, Kidwell does not dispute that he displayed a weapon to Lee and made threatening statements to him. ECF 6 at 4. According to Kidwell, Lee applied "multiple closed fist blows to the face and head . . . and [Kidwell] began to yell, I am not resisting. Ofc. Lee continued to punch the Plaintiff and threw him to the ground." *Id.* Additionally, Kidwell alleges that Officer Lee "continued to beat the Plaintiff in the head and face while in restraints, tell the Plaintiff, faggot, you should have just used the knife, while the Plaintiff continued to yell, I am not resisting." *Id*. He alleges that he was sprayed in the face with mace and tased while he was in restraints, "while being called bitch ass queer, fucking queer and other

homophobic slurs." *Id*. at 5.

Lee avers that he saw Kidwell "beg[i]n to raise the weapon towards [him]." ECF 23-3 at 3. In response, Lee "struck [Kidwell] in the face with a closed fist," "continued to engage" with Kidwell while he refused to cooperate with being restrained, and "used [his] taser to administer a single five second drive stun to [Kidwell's] upper torso." *Id.*

Lee does not state what specific actions he took while continuing to "engage" with Kidwell. Nor does he describe Kidwell's actions during that time in order to put his own actions into context. Moreover, he does not address any of Kidwell's specific allegations, including that he continued to beat, mace, and taze plaintiff after plaintiff was restrained.

In sum, Lee has not presented sufficient evidence to demonstrate that he is entitled to summary judgment. Therefore, the Motion will be denied as to Lee.

### b. Cesar Salcedo

Officer Salcedo recounts, ECF 23-4 at 2: "Immediately after Kidwell's cell door opened, I heard Officer Lee shout 'Are you going to stab me?' Then Kidwell engaged with Officer Lee. I entered the cell and grabbed Kidwell's legs to assist in bringing him to the ground. Once he was on the ground, I assisted in handcuffing Kidwell."

Salcedo does not describe the actions of Lee, Kidwell, or other officers during the encounter. Nor does he deny Kidwell's allegations that he was assaulted, sprayed in the face with mace, and tased multiple times while in restraints and yelling that he was not resisting.

Viewed in the light most favorable to Kidwell, the evidence shows that Salcedo held Kidwell down while Lee and other officers assaulted him. Salcedo's Motion shall be denied.

### c. Ezekiel Shell

Kidwell alleges that Shell was one of the officers present when he was assaulted, maced,

and tased after being placed in restraints outside his cell in the segregation unit. ECF 6 at 4. Additionally, Kidwell states that after seeing a nurse in medical, he was brought to the central booking area. There, officers removed plaintiff's handcuffs "while shoving him into the strip room." *Id.* at 5. At that point "Cpl. Ezekiel Shell punched the Plaintiff six times in the mouth and nose, causing blood to splatter on the window of the strip search room." *Id.* at 5.

In response to the allegations against him, Shell avers that he immediately went to the segregation unit upon hearing a radio call for assistance. ECF 23-5. There, he saw Kidwell "actively fighting with other corrections officers," and Shell "assisted in securing his upper torso so that he could be placed in handcuffs." *Id.*

Shell provides no further details regarding the actions of Kidwell, Shell, or the other officers. *Id.* Notably, Shell does not state whether he had any further interaction with Kidwell after he was handcuffed and in the segregation unit, leaving unrefuted Kidwell's verified allegations that Shell punched him six time while in the strip room.

Accordingly, there remains a material issue of fact as to whether Shell used excessive force against Kidwell. The Motion shall be denied as to Shell.

d.  Jacob Platt; Miguel Reyes; Caleb Leubecker; Tyler Fox

Kidwell avers that defendants Platt, Reyes, Leubecker, and Fox, together with Jolly and Shell, participated in spraying him in the face with mace and tazing him multiple times after he was restrained outside his cell, all while calling him homophobic slurs. ECF 6 at 5. Kidwell further alleges that Platt, Reyes, Leubecker, and Fox beat him prior to placing him in the restraint chair in the central booking area. *Id.* According to Kidwell, after he was in the restraint chair, he was told that "when Carroll County comes, your faggot ass is getting the fuck out of our jail, and, you don't fuck with our family." *Id.*

Platt avers that he was the booking officer on duty at the time of the incident, and that he responded to a call for assistance in the segregation unit. ECF 23-6. He states that he "saw several officers attempting to secure inmate John Kidwell," and that he "assisted in securing him in handcuffs" and "assisted in escorting him to the Medical Unit." *Id*. Platt states that no force was used while they were in the medical unit, he did not escort Kidwell to the booking unit, and that he had no further interaction with him. *Id*.

Like his counterparts, Platt does not provide any details regarding what happened in the segregation unit, nor does he refute Kidwell's version of events. Because Platt provides no facts to show otherwise, the evidence, viewed in the light most favorable to Kidwell, shows a genuine dispute of material fact regarding whether Platt used excessive force against Kidwell by assaulting him with mace and tazing him after plaintiff was restrained in the segregation unit.

Reyes avers that Kidwell was already in handcuffs when he arrived at the segregation unit to assist. However, he does not make any statement denying that he assaulted Kidwell when he was in handcuffs. ECF 23-8. Further, Reyes asserts that he "assisted in escorting Kidwell to the medical unit where he was evaluated and then to the Booking Unit where he was placed in a restraint chair." *Id*.

However, Reyes makes no statement refuting Kidwell's allegations that he beat him in the booking area. Because Reyes presents no facts to refute Kidwell's verified allegations, the Motion will be denied as to him.

Leubecker provides an Affidavit with little detail about what occurred. ECF 23-11 at 2. He states that he was the booking officer on duty when Kidwell arrived in the booking area, and that he "assisted in strapping him in the chair." *Id*. Without providing details, Leubecker declares: "Officers used only the force necessary to hold [plaintiff] in the chair while other officers secured

the straps.  They did not strike him."  *Id.*

Leubecker leaves unclear whether he personally struck Kidwell and whether the other officers struck Kidwell before or after placing him in the restraint chair.  Like his fellow officers, Leubecker provides scant details about what actually occurred, relying on the conclusory statement that officers used "only the force necessary," without providing a single detail as to what actually happened.

Genuine disputes of material fact remain as to whether Leubecker used excessive force against Kidwell.  Therefore, the Motion shall be denied as to Leubecker.

e.   Michael Rea

Kidwell alleges that Michael Rea participated with Jolly, Shell, Reyes, Platt, and Fox to spray him in the face with mace and taze him multiple times while calling him homophobic slurs and while he was in restraints.  However, he does not allege any specific actions that Rea took against him.  ECF 6 at 5.[7]  Rea states that, Kidwell was already in handcuffs when he arrived at the segregation unit in response to the call for assistance and that he stayed behind to assist officers in searching for the weapon and other contraband while Kidwell was escorted to medical.  ECF 23-2 at 2.  Rea declares that he had no further contact with Kidwell.  *Id.*

Kidwell does not controvert Rea's Affidavit, in which Rea avers that his involvement was limited to searching Kidwell's cell after Kidwell was handcuffed and escorted to medical. Therefore, even when viewed in the light most favorable to Kidwell, Rea did not participate in the alleged assault in the segregation unit.  The Motion, construed as a motion for summary judgment as to Rea, shall be granted.

---

[7] Kidwell also states that Rea was the officer who approved Lee's request for Kidwell to get recreation.  ECF 6 at 4.  Rea confirms this statement.  ECF  23-12 at 2.

f.   Tyler Fox

Kidwell names Tyler Fox as one of the officers who responded to the call for assistance and sprayed him in the face with mace and tazed him after he was already restrained. ECF 6 at 5. Additionally, he alleges that Fox beat him while he was in the booking area prior to placing him in the restraint chair. *Id.*

Fox declares that he responded to the radio call for assistance and saw officers escorting Kidwell to medical when he arrived. ECF 23-10 at 2. He then assisted other officers in conducting a search of Kidwell's cell. *Id.* Subsequently, he went to the booking area "to confirm no additional weapons or contraband were discovered." *Id.* Fox declares that "[a] thorough strip search was conducted," but he provides no details of the search or even whether he participated in it. *Id.* He states that a "'tattoo plucker'" was discovered, and that "Kidwell was placed in the restraint chair" after the search, again without describing his actions. *Id.*

Fox does not specifically refute Kidwell's allegations that Fox assaulted him. *Id.* As such, Fox is not entitled to summary judgment and the Motion will be denied as to him.

g.   William Jolly

Kidwell alleges that defendant William Jolly was one of the officers who responded to the segregation unit to assist Lee and proceeded to participate in spraying him in the face with mace and tazing him multiple times after he was in restraints. ECF 6 at 5. Jolly declares that he is aware of an incident involving Kidwell that occurred on May 26, 2021, but that he was not involved in any way. ECF 23-13 at 2. Further, he declares that he "did not respond to the call for assistance, nor was [he] present in the medical or booking unit when Kidwell was taken there." *Id.*

Whether Jolly was present on the day of the incident is a material fact in dispute. Jolly could have submitted duty log files or incident reports to substantiate his contention that he was

not present, but he did not do so.  Therefore, the evidence consists of the competing verified statements of Jolly and Kidwell, and the evidence is not sufficient to support summary judgment in Jolly's favor.  The Motion shall be denied as to Jolly.

h.   Richard Clayton and Darryl Osborne

Kidwell named Clayton and Osborne as defendants in his original Complaint, alleging that they were among the officers who assaulted him while he was handcuffed after the altercation with Lee.  ECF 1 at 3.  However, he does not mention them in the subsequent amended complaints. ECF 5, ECF 6.

Clayton declares that when he responded to the call for assistance in the segregation unit, he saw Kidwell "actively fighting with multiple officers inside of his cell."  ECF 23-9 at 2.  He states, *id.*: "Once Kidwell was handcuffed, Officer Jacob Platt and I escorted Kidwell to the medical unit."  Clayton also declares, *id.*: "No force was used while Kidwell was in the medical unit."  *Id*.  And, he avers that after Kidwell received medical treatment, "Kidwell was escorted to the booking room where he was stripped searched and placed in a restraint chair. To place Kidwell in the restraint chair, officers had to hold him down while the straps were adjusted."  *Id*. at 2-3.

Clayton provides no further details.  Moreover, he does not specifically respond to Kidwell's allegations of assault.  Because Clayton has not presented sufficient evidence to support the Motion seeking summary judgment, it will be denied as to him.

Osborne declares that he also responded to the segregation unit, and "observed a number of corrections officers attempting to subdue inmate John Kidwell."  ECF 23-7 at 2.  Without specifically describing Kidwell's actions, Osborne states he heard several officers yelling that Kidwell had a "shank," so he "immediately removed [his] pepper spray and deployed a one second burst to Kidwell's face."  Osborne states that "Kidwell continued to fight and refused to be

handcuffed," so he "applied two close fist strikes to his torso with no result. Next, [he] applied two knee strikes to his torso causing Kidwell to give up his hands and allowing [officers] to secure him in handcuffs." *Id*. After Kidwell was escorted to medical, Osborne states that he ordered Sgt. Fox to have him strip searched and placed in the restraint chair, and that he assisted in searching the cell for contraband and had no further interaction with Kidwell. *Id*. at 3.

Osborne provides details regarding the altercation in the segregation unit, including as to the contention that Kidwell was resisting being handcuffed. But, his description of events directly conflicts with Kidwell's assertion that he was not resisting and that the assault continued after he was restrained. Therefore, material issues of fact remain as to Kidwell's claims against Osborne, and the Motion will be denied as to him.

E.    Qualified Immunity

Defendants contend that they are entitled to qualified immunity. ECF 23-1 at 12. However, they provide only a general statement of the qualified immunity principles, without any substantive analysis of the issue. *Id*. Furthermore, the facts on the record are not sufficient to determine whether any defendant is entitled to qualified immunity.

"Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. PAE Government Services, Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018)) (cleaned up); *see Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam); *Taylor v. Riojas*, 592 U.S. 7, 8 (2020) (per curiam); *City of Tahlequah Okla. v. Bond*, 595 U.S. 9, 12 (2021) (per curiam); *Belton v. Loveridge,* 129 F.4th 271, 277 (4th Cir. 2025); *Rambert v. City of Greenville*, 107 F.4th 388, 393 (4th Cir. 2024); *Nazario v. Gutierrez*, 103 F.4th 213, 230

(4th Cir. 2024); *Younger v. Crowder*, 79 F.4th 373, 385 (4th Cir. 2023); *Hulbert v. Pope*, 70 F. 4th 726, 732 (4th Cir. 2023); *Franklin v. City of Charlotte*, 64 F.4th 419, 530, 534-35 (4th Cir. 2023); *Hicks v. Ferreyra*, 64 F.4th 156, 169 (4th Cir. 2023); *Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021); *Humbert v. Mayor and City Council of Balt.*, 866 F.3d 546, 555 (4th Cir. 2017), *cert. denied*, 584 U.S. 1013 (2018); *Osborne v. Georgiades*, 679 F. App'x 234, 237 (4th Cir. 2017); *Scinto v. Stansberry*, 841 F.3d 219, 235 (4th Cir. 2016); *Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015).

In *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015), the Fourth Circuit reiterated: "Qualified immunity protects government officials from liability for 'civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 395 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see Milla v. Brown*, 109 F.4th 222, 232-331 (4th Cir. 2024). Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Harlow*, 457 U.S. at 818.

"The officers must show that either they did not violate a constitutional right, or that the right was not clearly established when the challenged conduct occurred." *Milla*, 109 F.4th at 233. An officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. Rather, the doctrine protects officials "'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation omitted); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).

As the Fourth Circuit has said, qualified immunity "does not permit law enforcement to act with impunity, throwing our nation's constitutional commitments to the winds of individual discretion. But it does require fair notice of the landscape of the law to those who must enforce it." *Somers v. Devine*, 132 F. 4th 689, 695-96 (4th Cir. 2025).

To analyze whether qualified immunity applies, the courts generally employ a two-step inquiry. *Hicks*, 64 F.4th at 169; *see Tolan v. Cotton*, 575 U.S. 650, 655 (2014); *Nazario*, 103 F.4th at 230. The two inquires are as follows: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional [or statutory] right," *Saucier v. Katz*, 533 U.S. 194, 201 (2001); and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012) (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)), *cert. denied*, 568 U.S. 1068 (2012); *see also Ashcroft v. Kidd*, 563 U.S. 731, 735 (2011); *Nazario*, 103 F.4th at 230; *Cannon v. Village of Bald Head Island*, 891 F.3d 489, 497 (4th Cir. 2018); *Scinto*, 841 F.3d at 235. The "two inquiries . . . may be assessed in either sequence." *Merchant*, 677 F.3d at 661-62. But, "clarity is key." *Somers*, 132 F.4th at 696.

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see Hicks*, 64 F.4th at 169; *Barrett*, 975 F.3d at 428-29; *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cty.*, 893 F.3d 213, 219 (4th Cir. 2018); *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). Countless cases support these principles. *See, e.g., White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam); *Mullenix v. Luna*, 579

U.S. 7, 12 (2015) (per curiam); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Saucier*, 533 U.S. at 206; *Robertson*, 989 F.3d at 288; *Ray v. Roane*, 948 F.3d 222, 229-30 (4th Cir. 2020); *Hupp v. Cook*, 931 F.3d 307, 317 (4th Cir. 2019); *Attkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019); *Williamson v. Stirling*, 912 F.3d 154, 186 (4th Cir. 2018); *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018); *Spivey v. Norris*, 731 F. App'x 171, 175 (4th Cir. 2018); *O'Neal v. Rollyson*, 729 F. App'x 254, 255 (4th Cir. 2018) (per curiam); *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 582-83 (4th Cir. 2017); *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013); *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013); *Merchant*, 677 F.3d at 661.

Qualified immunity is an affirmative defense. *Hicks*, 64 F.4th at 169; *Ridpath v. Bd. of Governors Marshall Univ.,* 447 F.3d 292, 305 (4th Cir. 2006). But, it does not merely provide a defense to liability. Rather, it provides "*immunity from* suit . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in *Mitchell*); *see Gilliam v. Sealey*, 932 F.3d 216, 229 (4th Cir. 2019), *cert. denied,* 140 S.Ct. 2641 (2020)*; see also Ussery v. Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015). Accordingly, the immunity is "'effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell*, 472 U.S. at 526).

"The plaintiff bears the burden of proof on the first question—i.e., whether a constitutional violation occurred . . . . [and] [t]he defendant bears the burden of proof on the second question— *i.e.*, entitlement to qualified immunity." *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007) (internal citations omitted); *see also Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). In other words, "[b]ecause an official 'who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity,' the defendant bears the initial burden 'of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties.'" *Purnell,* 501 F.3d at 377 n.2 (citation omitted).

As indicated, if an officer is shown to have violated the rights of a plaintiff, the court must "evaluate whether the right at issue was 'clearly established' at the time of the officer's conduct." *Wilson*, 893 F.3d at 219. This is a question of law for the court to resolve. *Ray*, 948 F.3d at 228; *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). "The inquiry into whether a constitutional right is 'clearly established' requires defining the right at issue." *Hicks*, 64 F.4th at 170; *see Halcomb*, 992 F.3d at 319-20. "The Supreme Court has cautioned against defining a right with 'a high level of generality'. . . ." *Hicks*, 64 F.4th at 170 (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).

The Fourth Circuit has said, *Nazario*, 103 F.4th at 231:

> The applicable body of precedent for conducting the "clearly established" inquiry will involve the "decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose." *See Hill v. Crum*, 727 F.3d 312, 322 (4th Cir. 2013) (internal quotation marks omitted). In the absence of controlling authority, however, "a robust consensus" of persuasive authority may demonstrate the existence of a rule "that every reasonable official would know." *See District of Columbia v. Wesby*, 583 U.S. 48, 138 S. Ct. 577, 589-90, 199 L.Ed.2d 453 (2018) (internal quotation marks omitted). And there could be a "rare obvious case," where general constitutional standards can clearly establish a right, "even though existing precedent does not address similar circumstances." *Id.* at 590 (internal quotation marks omitted).

In order for a constitutional right to be clearly established, its parameters "must be sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The unlawfulness of an official's conduct must be "apparent in light of pre-existing law." *See Booker v. S.C. Dept. of Corrections*, 855 F.3d 533, 538 (4th Cir. 2017) (internal quotation marks omitted). The Fourth Circuit has said, *Nazario*, 103 F.4th at 230: "And to be apparent in that context requires that the constitutional question [be] beyond debate." *See Ashcroft*, 563 U.S. at 741. However, "a constitutional question

is not always 'beyond debate' because of the absence of precedent establishing a specifically adjudicated right." *Nazario*, 103 F.4th at 230-31.

Notably, "even when the facts in the record establish that the officer's conduct violated a plaintiff's constitutional rights, the officer still is entitled to immunity from suit 'if a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights.'" *Wilson*, 893 F.3d at 219 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)); *see Williams v. Strickland*, 917 F.3d 763, 768 (4th Cir. 2019); *Greene v. Feaster*, 733 F. App'x 80, 82 (4th Cir. 2018) (per curiam).

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *Creighton*, 483 U.S. at 639). If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818; *see Somers*, 132 F.4th at 696. On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818-19.

Kidwell alleges that he was beaten, sprayed with mace, and tazed even though he was not resisting and was restrained. Additionally, he alleges that he was beaten prior to being placed in a restraint chair. Defendants contend that they only took such as action as was necessary to control and restrain Kidwell. However, they provide scant information as to what actions Kidwell took that required their forceful response.

A "question of material fact" as to whether "'the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (citation omitted). A dispute of material fact is not appropriate for resolution, either at the motion to dismiss stage or on summary judgment. As discussed above, at this juncture I cannot resolve the disputes of fact relevant to Kidwell's Fourteenth Amendment claims. Therefore, resolution of the issue of qualified immunity would be premature.

## IV.    Conclusion

For the foregoing reasons, the Motion shall be granted as to defendants CCDC and Rea and denied as to the remaining defendants. Because the case will move to discovery, Kidwell will be provided an opportunity to file a renewed motion for appointment of counsel.

A separate Order follows.


August 11, 2025                                        /s/
Date                                              Ellen L. Hollander
                                                  United States District Judge